OPINION of the Court, by
Judge Wallace.
ín this suit Melton bolds the elder legal title to the land in contest; which he ought not to he compelled to relinquish, until Bowman, who was the complainant in the court below, establishes a superior equitable title thereto. Bowman claims under the following certificate from the commissioners and entry with the surveyor :
“ April 20, 1780, Daniel Gillaspy, &c. this day claimed a pre-emption of lDOO acres of land, See. on account of marking and improving the same, &c. lying on a branch of Licking, that runs in on the south side of í ■ inkson’s fork of Licking, near Hinkson’s improvement, about 14 or 15 miles up the said creek, to include his improvement,” &c.
“ December 6th, 1782, John Craig and Robert Johnson, assignees, &c. enter 1000 acres of land on a preemption warrant, on Daniel Gillaspy’s improvement, on Hinkson’s fork, a branch of Licking, running in on the south side, near Hinkson’s improvement, and about 13 or 14 miles up the branch, to begin on a southwestern branch thereof on the west. The said Daniel has a cabin standing about three-fourths of a mile from the mouth, 40 poles above the cabin, thence to run such courses and distances as to include the quantity in a square figure, with the branch running through the middle thereof, including his improvement.”
It is proper here to premise, that as to every preemption right obtained for marking and improving the land, the entry with the surveyor will bind the owner, or he will have the advantage of it, as the case may require, for the reasons assigned in the cases M'Clenahan vs. Litton, (Hugh. 181) Bryan and Owings vs. Wallace, &c. (Hugh. 209, 210) which have heretofore been decided by this court. So that the certificate cannot be admitted to aid or explain the entry with the surveyor, or otherwise be of any advantage, only to support the dignity of the cljdm. And in this respect Gillaspy’s certificate is not material in the present suit, because Melton’s entry is younger than the one which has just fecea reoiled. Indeed it would be hard, that eeitifi- *152 cates of {his kind should have any other effect than the one which has just been mentioned ; inasmuch as they were not of record with the surveyor, nor otherwise ac* cessible to other locators, whilst any vacant lands remained to be elite red, without travelling to the register’s office at Richmond in Virginia. Therefore, the court must proceed to consider the entry in question without regarding the certificated
It ought to be presumed that Licking (a large and extensive watercourse) and all its principal prongs were very notorious when this entrv was made : and it it abundant!}' proven that Hinkson’s fork of Licking was then well known by that name.
It is further proven that Ruddle’s Station was situated on the north bank of Hinkson’s fork ; and that John Hinkson had an improvement on its south bank, and nearly opposite to the station ; and that they were both known to the generality of those who were conversant in that quarter of the country at the time, and long before this entry was made. But Ruddle’s Station is not called for in the entry ; which was necessary to identify the improvement which was intended. And by the clause in the entry, “ on Hinkson’s fork, a branch of Licking, running in on the south side near Hinkson’s improvement,” ii is contended that other locators would have conceived that an improvement near the mouth of Hinkston’s fork, belonging to some person named Hink-son, was meant; and moreover, by the call, “ about 13 or 14 miles up the branch,” would have been understood that Giliaspy’s improvement was*about that distance up Hinkson’s fork, a branch of main Licking.
But, on the reverse, it is Contended that, from th? testimony in the cause, it satisfactorily appears, that during the period in which this entry was mads, the inhabitants of Bryan’s Station, and others who resided the most contiguous, and were the most conversant with Ruddle’s Station, frequently called it Licking Station ; and Hinkson’s fork, which passed by it, they called Licking; and it is further proven that there is a Smaller watercourse which empties into Hinkson’s on the southwardly side, about 400 poles above John Hink-son’s improvement, the mouth of which is nigher that. Improvement than the mouth of any other stream of con» si&rabie size, aad which, behw its three forks, wM *153 then well known by the ríame of Hinkson’s Mill creek, and that one of those forks was called TownseriS’s run ur creek; and that it ought to be presumed that this was tl»e main or principal fork, because it appears that ■⅛ name of this fork has latterly been extended to the whole stream.
It seems to the court highly probable that the composer ot this entry, by the expression Licking meant Hink-son’s fork, and by the expression H ink son’s fork he meant the watercourse which has generally been distinguished by the name of Townsend’s run. But to say die least, it must be conceded that when two or more names are given to any object, an uncertainty is produced which will lead to deception in describing it by either of those names, unless accompanied by some explanation. And in the clause of this entry now under consideration, there are two instances of this kind, which must be fatal to the entry, unless it contain some explanatory call to remove the uncertainty.
The next clause of the entry is, about thirteen or fourteen miles up the branch, to begin on a southwestern branch thereof on the west. This clause does not contain any thing to remove the uncertainties which have been mentioned, but it produces other uncertainties. More especially, it does not express whether the distance along the meanders of the watercourse, or the distance on a direct line, or the reputed distance was meant. It indeed is not very probable that the distance along the meanders of the watercourse was intended, because it is believed that it never was usual to travel with the meanders of a small stream to ascertain the distance from «tie object to another; nor is it probable ■that the distance on a direct line was intended, because it would extend beyond the heads of that watercourse. But it is rather to be presumed that reputed distance was meant. A witness deposes that in the years 1773 and 1776, it was reputed to be 12 or 14 miles from Giilaspy’s improvement to the mouth of the watercourse ; but that at a subsequent period, he did not think it so far by some miles. The presumption is strong, that in 1775 or 1776 there was no path or trace leading from the. one place to the other. But it is proven that for two or three years before this entry was anide, there was a trace from Ruddle’s Sation to Lex- *154 Ingtote, which went up this creek ; but there is no proof as to the reputed distance along this trace. In this respect, therefore, other locators were left in the greatest uncertainty. It appears that the distance along the meanders of the watercourse from its mouth to the place shewn for Gillaspy’s improvement is only between 11 and 12, and an a direct course but a little more than 7 miles j so that it is not probable that the distance along the trace was estimated at more than 9 or 10 miles. And if subsequent locators had ascertained the distance of 13 or 14 miles called for in this clause of the entry, in either or all of those ways, they would have been led far beyond the southwestern branch, on which this improvement was situated.
The remaining clause of this entry is, the said Daniel has a cabin standing about 3-4 of a mile from the mouth, 40 poles above the cabin, thence to run such courses and distances as to include the quantity in a square figure, with the branch running through the middle thereof, including his improvement. It seems difficult, if not impossible, to give this clause any certain construction. The expression, the said Daniel has a cabin standing about 3 4 of a mile from the mouth, and the expression, 40 poles above the cabin, are not so clearly repugnant to each other, as that either oí them ought to be rejected for that reason ; nor can either of them be rejected as surplusage, or as unimportant, or without meaning. Taken in connection with the preceding and subsequent parts of the entry, perhaps subsequent locators would have given the locative parts thereof the following meaning, to wit: Beginning on a southwestern branch of Mill creek, 40 poles above Daniel Gillaspy’s improvement, which is a cabin, standing about 3-4 of a mile from the mouth of said branch, on the west side thereof. But admitting this to be the true construction, yet other uncertainties present themselves in addition to those which have been stated. The cabin shewn for Gdlaspy’s improvement is only 43 poles from the mouth of the branch, and not 3-4 ol a mile ; and moreover, it is not proven that at or. near the cabin there ever was any special mark affixed, shewing to whom it belonged. But on the contrary, it is proven that a tree near the cabin was marked with letters which answered for she initials of some other person j an4 *155 that on the tree at the mouth of the branch the same le tif-rs were also marked.
On the investigation of the several parts of this entry, the court is of opinion, that almost every call it contains is so uncertain, delusive and erroneous, that the entry cannot be supported : not to say that there are several obvious deficiencies in it which have not been mentioned.
There is, however, one consideration which mighl have saved it from destruction. If Gillaspy’s improve» ment had been well known to the greater number of those who were conversant with IHinkson’s fork of Licking, and its southwestern branches,, this degree of notoriety would have rendered all the imperfections/ in the other calls of the entry immaterial.
But the court having carefully examined all the testimony relative to this point, do not find that Gillaspy’s improvement had acquired any such degree of notoriety before the date of the entry in question. Yet as this was the only chance on which Bowman could, rationally hope for success, it may not be improper to state the eubstance of all the Facts which are exhibited relative thereto. Joseph Tomlinson deposes, that in the spring 1776, he and some others assisted Daniel Gillaspy to kill and chop some trees and build a cabin near the head-of a spring which empties into, a southwestern branch of a creek now called Townsend. But he does not say that he or Gillaspy ever resided in this country ; and from some expressions in his deposition it may be inferred that they did not. And as the depositions of' none of the others who assisted in making this improvement have been taken, it is probable that none of them ever resided in this country. Robert Hartness deposes, that shortly after this improvement was made, he was informed by Daniel Gillaspy, when they were passing by the mouth of said southwestern branch, that his improvement was up the same. John Burger deposes, that in 1779 or 1780, at which time he resided at Rud-dle’s Station, a cabin called Gillaspy’s was known to him and others. Thomas Herndon deposes, that in the early part of the year 1782 he camped at a place on a branch of Townsend’s run, which a man in compány with him informed him was Daniel Gillaspy’s improvement ■, and that he believes sufficient information how to |nd it might have been gotten at Bryan’s Station, which *156 ¾⅞8 t¡ie most contiguous settlement of people tó it, Harry Herndon deposes, that in the year 1782, he often passed by a place called Gillaspy’s improvement, which, was on a branch emptying into Townsend’s run. Samuel M’Mullen deposes, that in 1779 or 1780, he travel-led along the trace from Lexington, where he resided, to Ruddle’s station, which passed near a spring and cabin on a branch of Townsend’s creel, which to the best of his recollection was called Gillaspy’s improvement.
In all these depositions the situation of Gillaspy’s improvement is so described, as to shew that it was at the place which is exhibited for his improvement in this suit; and consequently, by these depositions, Gillaspy’s improvement is well identified. But in neither of them is it expressed or necessarily implied, that it was even known to the generality of those who were conversant in its immediate vicinity ; and this is the lowest degree, of notoriety which the reason of the case, or the former decisions of this court on the point, will justify; and which are too numerous to be conveniently referred to. So that the entry in question must be pronounced materially defective, both as to the description it contains of Gillaspy’s improvement, and as to the notoriety of his improvement when the entry was made ; and moreover, that the court below correctly decreed § dismissal of Bowmán’s bill with cost§.
Decree affirmed, &c,